# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

J&M INDUSTRIES, INC., )
)
        Plaintiff, )
) Case No.: 16-2723-JTM-KGG
RAVEN INDUSTRIES, INC. )
)
        Defendant. )
_____ )

## ORDER ON MOTIONS FOR PROTECTIVE ORDERS

Now before the Court are the parties motions for a Protective Order (Docs. 30, 32). Having reviewed the submissions of the parties, Plaintiff's motion (Doc. 30) is **GRANTED in part** and **DENIED in part**. Defendant's motion (Doc. 32) is **DENIED**.

## FACTS

This is a patent infringement case brought pursuant to 35 U.S.C. § 271, *et seq*. The parties are competitors in the grain storage cover industry. The parties, as competitors, agree that there is a need for discovery in this case to be governed by a Protective Order, but disagree as to certain particulars. Each issue with be analyzed in turn.

## ANALYSIS

**I.    Protective Orders.**

1

Federal Rule of Civil Procedure 26(c) governs Protective Orders and provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> > (A) forbidding the disclosure or discovery;
> >
> > (B) specifying terms, including time and place, for the disclosure or discovery;
> >
> > * * *
> >
> > (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> >
> > (E) designating the persons who may be present while the discovery is conducted;
> >
> > * * *
> >
> > (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; . . . .

Fed.R.Civ.P. 26(c)(1). Thus, the party seeking the Protective Order has the burden of showing good cause for it to be entered. *Id*.

## II.     Plaintiff's Proposed Protective Order.

Plaintiff seeks the Court's assistance on the following two issues regarding the Protective Order:

> (1) the requirement for each party to provide to the opposing party a copy of the Confidentiality Acknowledgement [sic] signed by any potential, anticipated or actual third party fact witness who is in receipt of opposing party's confidential information; and (2) the circumstances, if any, under which in-house counsel for [Defendant] may have access to Attorneys' Eyes Only ('AEO') information.

(Doc. 31, at 1.)

### A.     Confidentiality Acknowledgments from Witnesses.

The parties have agreed as to the portion of the proposed Protective Order relating to the viewing of designated confidential information by third parties. The process requires the party sharing the confidential information to have the third party complete a certification (hereinafter "Confidentiality Acknowledgment") that they have read the Protective Order and agree to be bound by its terms. Plaintiff seeks a provision in the Protective Order that would require any party that obtains a Confidential Acknowledgment to deliver it to opposing counsel within 5 days. (*See* Doc. 31, at 2; Doc. 31-1, at 14.)  Plaintiff argues that this "safeguard" benefits both parties as it "enables the parties to track the disclosure of their confidential information."  (Doc. 31, at 2.)

Defendant argues that this procedure violates the work product doctrine. (Doc. 35, at 5-6.)  More specifically, Defendant argues that this proposal would require Defendant "to divulge its investigation and who it is interviewing as that investigation unfolds." (*Id*., at 6.)

Plaintiff contends that the proposed provision is much more limited than this.  Plaintiff is not seeking the identities of everyone interviewed or the details of Defendant's investigation, rather Plaintiff is  "merely seek[ing] that the parties provide the Confidentiality Acknowledgments for third parties receiving *confidential information* belonging to the opposing party (wherein the Confidentiality Acknowledgments disclose the witness name and the date of signature)." (Doc. 31, at 3-4 (emphasis in original).)

The case law cited by the parties evidences a dispute in authority as to whether the identities of parties interviewed by opposing counsel are discoverable fact information or protected by the work product doctrine.  *Compare* **Equal Emp't Oppty. Comm'n v. BNSF Ry Co.**, 12-2634-JWL-KGG, 2014 WL 2589182 (D. Kan. June 10, 2014) (holding that factual information such as who was interviewed, when it occurred and who was present is not protected by the work product doctrine) *with* **Thompson v. Jiffy Lube Int'l, Inc.**, 05-1203-WEB-KMH, 2006 WL 2037395, at *2 (D. Kan. July 18, 2006) (acknowledging the difference

between the identities of persons with knowledge versus persons interviewed by counsel).

The issue was, however, recently addressed by another court within the Tenth Circuit in *American Auto. Ins. Co. v. First Mercury Ins. Co., et al.*, in the context of a deponent being asked which company employees had been interviewed by counsel. No. 13-04390-MCA-LF, 2016 WL 7395219 (D. N.M. Oct. 22, 2016). The deponent was instructed not to answer the question on the basis of the attorney work product doctrine.

After acknowledging the lack of definitive Tenth Circuit authority, the *American Auto.* court stated that

> [t]he weight of authority . . . suggests that discovery that seeks the identity of persons with knowledge is permissible, whereas discovery that seeks the identity of persons whom counsel has interviewed is not. *See* ***Massachusetts v. First Nat'l Supermarkets, Inc.***, 112 F.R.D. 149, 152 (D. Mass. 1986) ('when the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable'). Disclosure of the identities of witnesses interviewed 'would inevitably teach [the requesting party] which individuals [opposing counsel] considered more or less valuable as witnesses and how [he or she] was preparing for trial.' ***United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, et al.***, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *10 (S.D.N.Y. Aug. 18, 1992) (unpublished) (citing ***Appeal of Hughes***, 633 F.2d 282, 288–90 (3d Cir. 1980) (additional citations omitted)).

2016 WL 7395219, at *4.  The court upheld counsel's instruction that the deponent not answer the question.

The issue before the Court is distinguishable from *American Auto* because opposing counsel is not directly requesting the names of witnesses interviewed by counsel.  Rather, the disclosure at issue (which would be required by the Protective Order) requires counsel to produce to opposing counsel any Confidentiality Acknowledgments executed by third parties.  The fact that it may be inferred that the individuals who executed the Confidentiality Acknowledgments have been interviewed by counsel is incidental.  Even assuming that such disclosures would concurrently impede on the protection otherwise afforded by the work product doctrine, the need for the parties in this case to track the dissemination of their confidential information as part of the Protective Order constitutes "substantial need" for the information to be produced.  *See* Fed.R.Civ.P. 26(b)(3).[1]  The disclosure of the Confidentiality Acknowledgments is the best way to insure their effectiveness.

The Court, therefore, **GRANTS** the portion of Plaintiff's motion relating to the production of Confidentiality Acknowledgments (Doc. 30).  Copies of any executed Confidentiality Acknowledgments obtained in this case from non-

---

[1] The production of Confidentiality Acknowledgments does not apply to non-testifying consultants and non-testifying experts under Fed.R.Civ.P. 26(b)(4).  Such individuals are part of the litigation team and their identities are protected pursuant to Rule 26.

experts/non-consultants must be provided to opposing counsel within thirty (30) days of execution. Copies of any executed Confidentiality Acknowledgments obtained in this case from non-testifying experts and/or consultants must be maintained by counsel who originally had the acknowledgment executed for a period of two years following the disposition of this case, subject to court-ordered disclosure for exceptional circumstances within the meaning of Fed.R.Civ.P. 26(b)(4)(D).

**B.     In House Counsel Access to "Attorneys' Eyes Only" Information.**

The parties have agreed to a two-tier confidentiality designation allowing for certain information to be labeled "Attorneys' Eyes Only" (hereinafter "AEO"). The parties disagree, however, as to whether Defendant's in-house attorneys should be allowed to receive information that has been so designated. Plaintiff has divided such information into two categories: "secret technical information" and "proprietary financial information."

**1.     Technical information.**

Plaintiff admits that "the vast majority of documents pertaining to patent infringement and patent validity are public." (Doc. 31, at 6.) Thus, according to Plaintiff, in-house counsel need not have access to "secret technical information" to direct the litigation. If, however, some of Plaintiff's "secret technical information" is relevant to the question of patent validity, Plaintiff contends that

Defendant's "competent outside <u>patent</u> counsel can advise [Defendant] as to the impact of such information on the validity of the patent," making the disclosure to Defendant's in-house counsel unnecessary.  (*Id.*)

Plaintiff has not, however, made a specific showing of potential harm to exclude in-house counsel from any such information.  Plaintiff has made no showing of any specific "secret technical information" that will be at issue.  As such, Plaintiff has not met its burden pursuant to Fed.R.Civ.P. 26(c) to establish good cause for the Court to enter a Protective Order prohibiting in-house counsel from accessing this type of AEO information.  This portion of Plaintiff's motion is **DENIED**.

   **2.    Proprietary financial information.**

The parties also disagree as to whether Defendant's in-house general counsel Lindsay Edwards should have access to certain of Plaintiff's proprietary financial information marked AEO.  Plaintiff wants the ability to mark certain types of this information as "Attorneys' Eyes Only/Key Personnel." Such documents would be produced in redacted form "or a document providing a restricted summary of the parties Attorneys' Eyes Only financial information."  (Doc. 31, at 7-8.)  Defendant objects to this and contends it is necessary for Ms. Edwards to see this information in order to properly evaluate and direct the case.  Plaintiff contends the proposed procedure would allow "the parties to adequately direct litigation and to also

engage in settlement discussions while still limiting the disclosure of their proprietary financial information . . . ." (*Id.*, at 8.)

Plaintiff has again failed to make a specific showing of potential harm that would warrant excluding in-house counsel from having access to this information. To the contrary, access to this information will be necessary in order for Defendant to prosecute this case and evaluate potential damages. Thus, Plaintiff has failed to meet its burden pursuant to Fed.R.Civ.P. 26(c) to establish good cause for the Court to enter a Protective Order prohibiting in-house counsel from accessing this AEO financial information. This portion of Plaintiff's motion is **DENIED**.

### III. Defendant's Proposed Protective Order.

Defendant requests that the Court include a patent prosecution bar in the Protective Order precluding Plaintiff's "litigation counsel with access to [Defendant's] 'Confidential' or 'Attorneys' Eyes Only' information from also prosecuting patents on behalf of [Plaintiff] concerning related technology." (Doc. 33, at 1-2.) Defendant also seeks to have Ms. Emily Lippold Gummer, one of Plaintiff's lead patent attorneys, from accessing Defendant's "Attorneys' Eyes Only" information. (*Id.*)

A party seeking a patent prosecution bar must establish good cause for doing so. **In re Deutsche Bank Trust Co. Americas**, 605 F.3d 1373, 1378 (Fed. Cir. 2010). "Courts have recognized . . . that there may be circumstances in which even

9

the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *Id*. "The concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel also represent the same client in prosecuting patent applications before the PTO." *Id*., at 1379. The issue will turn on whether the attorney involved in the patent prosecution engages in "competitive decisionmaking" in that role. ***In re Deutsche Bank***, 605 F.3d at 1379. "Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. . . . The facts, not the category must inform the result." *Id*.

In this context, the ***Deutsche Bank*** court created the following test to apply when a patent prosecution bar is requested:

> We therefore hold that a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information. We further hold that the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that

10

>the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*Id.*, at 1381.

Defendant contends that "the two lead litigation attorneys for J&M, Ray Areaux and Emily Lippold Gummer, have prosecuted patents for J&M and are also the lead attorneys currently seeking patent protection for J&M on the same product – grain storage covers." (Doc. 33, at 4.) Defendant argues that "[w]here the same attorneys try to do both patent litigation and prosecution for the same client on the same technology, there is a compelling need for a prosecution bar to safeguard against inadvertent disclosure or misuse of sensitive information." (*Id.*, at 7.) Because Ms. Lippold Gummer and Mr. Areaux are involved in "investigating, defining, and drafting" other grain storage cover patent applications, Defendant argues that they are "engaged in precisely the type of dual roles that justify a patent prosecution bar."[2] (*Id.*)

Plaintiff responds that this case does not warrant a patent prosecution bar because "this dispute centers around a low-tech, <u>publically available</u> strapping systems [sic] . . . and their advertising, sale and use in the marketplace. (Doc. 34,

---

[2] Defendant also argues that the situation involving Ms. Lippold Gummer entails an "added risk" because she is married to Plaintiff's Vice President/General Manager and co-inventor of various grain storage cover patents. (Doc. 33, at 8.) The Court finds this fact, while interesting, to be irrelevant to its analysis.

11

at 1 (emphasis in original).)  Plaintiff points out that Defendant "fails to identify any specific information relevant to this patent infringement suit which would be harmful if disclosed."  (*Id.*, at 2.)

The Court agrees.  Lawyers should not be precluded from litigating patent cases "on the basis of a vague and generalized threat of future inadvertent misuse of discovered materials and in the absence of specific evidence that Plaintiff's counsel engages in competitive decision making."  ***Regal Beloit America, Inc. v. Broad Ocean Motor LLC***, No. 16-00111-JCH, 2017 WL 35702, at *3 (E.D. Missouri, Jan. 4, 2017) (citing ***Clayton Corp. v. Momentive Performance Materials, Inc.***, No. 12-1349-AGF, 2013 WL 2099437 at *4 ("Defendants have not provided the Court with an affidavit, declaration, or any other form of evidence on any issue related to the proposed prosecution bar ...").  Plaintiff correctly points out that Defendant "fails to identify the types of documents comprising secret technical information which it possesses that would be relevant to the suit and require a patent prosecution bar to protect."  (Doc. 34, at 6.)  Defendant has not met its burden to establish good cause for the requested patent prosecution bar. Defendant's motion (Doc. 32) is, therefore, **DENIED**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Protective Order (Doc. 30) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion for Entry of Protective Order (Doc. 32) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 18th day of July, 2017, at Wichita, Kansas.

s/ Kenneth G. Gale
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE