## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| J&M INDUSTRIES, INC.,        ) | |
| ) | |
|        Plaintiff,    ) | |
| ) | Case No.: 16-2723-JTM-KGG |
| RAVEN INDUSTRIES, INC.    ) | |
| ) | |
|        Defendant.    ) | |
| _____ ) | |

## ORDER ON MOTION TO COMPEL

Now before the Court is Plaintiff's Motion to Compel.  (Doc. 100.)  Having

reviewed the submissions of the parties, Plaintiff's motion (Doc. 100) is

**GRANTED in part**.

## FACTS

This is a patent infringement case brought pursuant to 35 U.S.C. § 271, *et

seq*.  The parties are competitors in the grain storage cover industry.  The present

motion relates to Defendant's responses to certain of Plaintiff's discovery requests.

Although the responses were supplemented subsequent to the filing of the present

motion, several issues remain.

## ANALYSIS

### I.    Legal Standards.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

## II.    Plaintiff's Motion to Compel (Doc. 100).

Plaintiff moves the Court for an order compelling Defendant to "provide full and complete answers and responses" to several interrogatories.  (Doc. 101, at 1.) Plaintiff contends the discovery requests relate to "the acts of infringement by [Defendant], [Plaintiff's] entitlement to pre-patent issuance damages and [Defendant's] assertions regarding its conduct and defenses."  (*Id*., at 2.)  Plaintiff argues that Defendant's responses are "deficient."  (*Id*.)  Plaintiff also seeks his

costs, including attorneys' fees relating to the dispute and motion. The Court will address the interrogatories in turn.

### A. Interrogatory No. 1.

Interrogatory No. 1 seeks certain information relating to "each and every time that [Defendant] has Provided an Internal Strapping System since August 2013 . . . ." (Doc. 101-2, at 2.) At issue are subsections (f)-(i),

> f. whether or not Raven provided, whether itself or by contractors of Raven, installation services for each Event and the name of the person who rendered those installation services,

> g. for each Event, the amount charged by Raven to its customer(s) for its products and services related to each Event, including, without limitation, the price charged for said Internal Strapping System,

> h. any ancillary services provided by Raven to its customers in connection with each Event, and

> i. the amount charged by Raven to its customers for any such ancillary services.

(*Id*., at 3.)

According to Plaintiff, the responsive documents produced by Defendant consist of invoices and "do not comprise any information regarding any installation services or ancillary services provided with the Internal Strapping Systems." (Doc. 101, at 3.) Plaintiff argues that because Defendant contends "that it does not

infringe the [patent at issue]" and that its system "can be installed in a non-infringing manner," the identification "of persons involved in the installations is highly relevant so that [Plaintiff] may rebut Defendant's claim of non-infringing installations." (*Id.*) Plaintiff also argues that the pricing is "highly relevant" to its claim for damages as lost profits. (*Id.*)

Defendant states that it "does not provide installation or ancillary services, and it does not generate revenue from these services, so it has no additional information to provide about them beyond the invoices showing [Defendant's] revenue from sales of the products." (Doc. 108, at 3.) Defendant also states that it has informed Plaintiff's counsel of this fact "several times over the course of this case," including during the meet and confer for this motion. (*Id.*)

Plaintiff replies that while this amended answer addresses subparts (h) and (i), Defendant has not yet provided complete answers to subparts (f) and (g), failing to state whether it provides any installation services, either directly or through contractors. (Doc. 110, at 2.) The Court agrees and this portion of Plaintiff's motion is **GRANTED**. Defendant is directed to provide a supplemental answer that specifically responds to subparts (f) and (g).

## B.    Interrogatory No. 2.

This interrogatory asks for "the date on which [Defendant] became aware of the publication or issuance of each of [Plaintiff's] Applications and the Patent in

Suit." (Doc. 101-2, at 3.) Defendant responded that it "became aware of the patent in suit no later than late May 2016, shortly after receiving a letter about it from [Plaintiff]. [Defendant] became aware of other [Plaintiff] patent applications during this lawsuit." (*Id.*, at 4.) This portion of Plaintiff's motion has been withdrawn based on supplemental responses provided by Defendant. (Doc. 110, at 1.)

### C.    Interrogatory No. 8.

This interrogatory asks for "each instance, omission, occurrence or document which limits or bars plaintiff s remedies pursuant to 35 U.S.C. §§ 286, 287 and/or 288," which respectively relate to Defendant's affirmative defenses of time limitation on damages, limitation on damages and other remedies, and/or action for infringement of a patent containing an invalid claim. (Doc. 101-2, at 7.) Defendant responded that it is "not aware of [Plaintiff's] damages theories, and [it] will be in a better position to provide more information about learning more from plaintiff." (*Id.*) Defendant stated that it "will supplement this response further after expert disclosures are made." (*Id.*)

Plaintiff argues that Defendant's response "offers no factual basis" for this affirmative defense. (Doc. 101, at 5.) As such, Plaintiff contends that Defendant should either provide a factual basis or the affirmative defense should be stricken. (*Id.*)

Section 286 states that "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."  Defendant's supplemental response states that "there is not any statute of limitations bar on [Plaintiff] seeking damages from May 24, 2016[,] forward."  (Doc. 108-2.)  Plaintiff replies with the query, "[b]ut what about prior to May 24, 2016?"  (Doc. 110, at 3.)  Plaintiff would like to know whether Defendant contends that Plaintiff is barred from recovering such prior damages, and if so, the basis for such a contention.  (*Id*.)  The Court directs Defendant to provide a supplemental response addressing this issue.

Section 287 relates to notice given to the public that an article is patented. Plaintiff argues that Defendant's supplemental response regarding § 287 "fails to state whether it is alleging limitation of damages based on failure of [Plaintiff] to mark its products."  (Doc. 110, at 4.)  Defendant is directed to provide a supplemental response addressing this issue, specifically indicating the basis for any such contention as well as whether Defendant contends it was not given proper notice of infringement.

Section 288 provides that when "a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has

been entered at the Patent and Trademark Office before the commencement of the suit." Defendant's supplemental response to this interrogatory states "alleges there are no damages in this case… because the claims of the '239 patent are invalid." As Plaintiff indicates, however, §288 "only applies where a claim of a plaintiff's patent was found invalid prior to the initiation of a lawsuit for patent infringement." (Doc. 110, at 4 (emphasis in original) (internal citation omitted).) As such, Plaintiff contends that "[t]he patent-in-suit is a validity-issued patent and has no claims have been invalidated. So what is Raven referring to in alleging limitation of damages under §288?" (*Id.*, at 5.) Defendant is instructed to provide a supplemental response addressing this issue.

### D.    Interrogatories Nos. 9 and 10.

Interrogatory No. 9 also relates to Defendant's affirmative defenses, and asks for "each instance of 'unclean hands,' 'waiver,' 'laches,' 'estoppel,' 'prosecution history estoppel' and 'prosecution disclaimer.'" (Doc. 101-2, at 7.) Interrogatory No. 10 seeks information related to Defendant's affirmative defense that certain "statements," "amendments" or "other things" "estop plaintiff from construing the claims of the '239 patent in such a manner that covers [Defendant's] products." (Id.) Defendant responds to these interrogatories, in part, that it

> understands from the meet and confer process that
> [Plaintiff] is asking for more about unclean hands. That
> theory can relate to both conduct in patent prosecution

7

and during litigation, so the complete answer is still unfolding.  For example, [Defendant] may learn additional facts that support unclear hands about the prosecution in discovery.  As of now, [Defendant] identifies that this lawsuit appears to be filed and pursued for an improper proper [sic], that it seems based on no concrete evidence of infringement, that [Plaintiff's] claim construction positions are not reasonable, and that [Plaintiff] has not been participating in discovery in a meaningful way.  [Defendant] anticipates supplementing this answer with quite a bit more as discovery proceeds.

(*Id.*, at 8-9.)

Plaintiff argues that Defendant has provided no "meaningful response" to Interrogatory No. 9 because Defendant does not identify the alleged improper purpose even though Plaintiff "has provided its concrete infringement position in its infringement contentions," provided claim construction positions, and engaged in discovery.  (Doc. 101, at 5-6.)  As to Interrogatory No. 10, Plaintiff further argues that the mere listing of filings provided Defendant "does not identify the 'statements,' amendments' or 'other things' that allegedly estop plaintiff's claim construction."  (*Id.*, at 6.)  Plaintiff argues that if Defendant has a basis for this affirmative defense, it should be disclosed; if not, the defense should be stricken. (*Id.*)

As to Interrogatory No. 9, Plaintiff argues that Defendant has offered "no factual basis for its 'unclean hands' affirmative defense."  (Doc. 110, at 5.)  In

other words, Defendant has put forth no factual contentions that Plaintiff is guilty of fraud, deceit, unconscionability, or bad faith.  (*Id*., quoting ***Sun Microsystems, Inc. v. Versata Enterprises, Inc.***, 630 F. Supp. 2d 395, 410 (D. Del. 2009).)  The Court instructs Defendant to provide a supplemental response detailing the alleged acts constituting Plaintiff's unclean hands or indicate that has no factual basis for this affirmative defense.

In regard to Interrogatory No. 10, Plaintiff disputes Defendant's contention that Plaintiff has failed to engage in meaningful discovery.  (Doc. 110, at 6.) Plaintiff argues that Defendant should be required to indicate the particular "statements," "amendments," or "other things" that "estop [Plaintiff] from taking such a claim construction position . . . ."  (*Id*.)  The Court agrees.  Defendant is instructed to provide a supplement response to Interrogatory No. 10 detailing the alleged statements, amendments, or other things.

### E.    Interrogatory No. 11.

This interrogatory asks Defendant to "[i]dentify all persons involved or responsible for the creation, conception, development or design of [Defendant's] Fortress brand internal strap system."  (Doc. 101-2, at 9.)  In response, Defendant states that Bob Hesse is the "primary person responsible" but that "[o]ther individuals may have been involved as well.  (*Id*.)  This portion of Plaintiff's

motion has been withdrawn based on supplemental responses provided by Defendant. (Doc. 110, at 1.)

### F.    Interrogatory No. 13.

Interrogatory No. 13 asks Defendant to "[d]escribe when [it] first learned of [Plaintiff's] internal strapping system, including, but not limited to, the date, location and persons involved." (Doc., 101-2, at 10.) In its supplemental discovery responses, Defendant stated that it "believes it first became aware that [Plaintiff] had some type of temporary grain storage system with internal straps sometime around September 2013. [Defendant's] investigation to date has not uncovered more specifics . . . ."

In reply, Plaintiff calls Defendant's response "suspicious." Plaintiff asks, "Why does [Defendant] believe it had knowledge . . . around September 13? Who at Raven remembers having knowledge around September 2013? And why do they remember that date?" (Doc. 110, at 7.) The Court agrees Defendant's response is incomplete and that the questions raised by Plaintiff are valid. Plaintiff's motion is **GRANTED** in this regard. Defendant is instructed to provide a supplemental response to Interrogatory No. 13 addressing these issues.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 100) is **GRANTED in part** as more fully set forth above.

IT IS SO ORDERED.

Dated this 20th day of February, 2018, at Wichita, Kansas.


 s/ Kenneth G. Gale
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE